*610 Justice Breyer
delivered the opinion of the Court.
We granted certiorari in these cases to decide whether Medicaid providers and recipients may maintain a cause of action under the Supremacy Clause to enforce a federal Med­icaid law — a federal law that, in their view, conflicts with (and pre-empts) state Medicaid statutes that reduce pay­ments to providers. Since we granted certiorari, however, the relevant circumstances have changed. The federal agency in charge of administering Medicaid, the Centers for Medicare & Medicaid Services (CMS), has now approved the state statutes as consistent with the federal law. In light of the changed circumstances, we believe that the question be­fore us now is whether, once the agency has approved the state statutes, groups of Medicaid providers and beneficiar­ies may still maintain a Supremacy Clause action asserting that the state statutes are inconsistent with the federal Med­icaid law. For the reasons set forth below, we vacate the Ninth Circuit’s judgments and remand these cases for pro­ceedings consistent with this opinion.
i-H
A
Medicaid is a cooperative federal-state program that pro­vides medical care to needy individuals. To qualify for fed­eral funds, States must submit to a federal agency (CMS, a division of the Department of Health and Human Services) a state Medicaid plan that details the nature and scope of the State’s Medicaid program. It must also submit any amend­ments to the plan that it may make from time to time. And it must receive the agency’s approval of the plan and any amendments. Before granting approval, the agency reviews the State’s plan and amendments to determine whether they comply with the statutory and regulatory requirements gov­erning the Medicaid program. See 79 Stat. 419, 344, as amended, 42 U. S. C. §§ 1316(a)(1), (b), 1396a(a), (b); 42 CFR §430.10 et sea. (2010); Wilder v. Virginia Hospital Assn., 496 *611 U. S. 498, 502 (1990). And the agency’s director has speci­fied that the agency will not provide federal funds for any state plan amendment until the agency approves the amend­ment. See Letter from Timothy M. Westmoreland, Direc­tor, Center for Medicaid & State Operations, Health Care Financing Admin., U. S. Dept, of Health and Human Servs.,. to State Medicaid Director (Jan. 2, 2001), online at http:// www.cms.gov/SMDL/downloads/SMD010201.pdf (as visited Feb. 17, 2012, and available in Clerk of Court’s case file).
The federal statutory provision relevant here says that a State’s Medicaid plan and amendments must:
“provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the ex­tent that such care and services are available to the gen­eral population in the geographic area” 42 U. S. C. § 1396a(a)(30)(A) (emphasis added).
B
In 2008 and 2009, the California Legislature passed three statutes changing that State’s Medicaid plan. The first stat­ute, enacted in February 2008, reduced by 10% payments that the State makes to various Medicaid providers, such as physicians, pharmacies, and clinics. See 2007-2008 Cal. Sess. Laws, 3d Extraordinary Sess., ch. 3, §§14, 15. The second statute, enacted in September 2008, replaced the 10% rate reductions with a more modest set of cuts. See 2008 Cal. Sess. Laws ch. 758, §§45, 57. And the last statute, enacted in February 2009, placed a cap on the State’s maxi­mum contribution to wages and benefits paid by counties to *612 providers of in-home supportive services. See 2009-2010 Cal. Sess. Laws, 3d Extraordinary Sess., ch. 13, § 9.
In September and December 2008, the State submitted to the federal agency a series of plan amendments designed to implement most of the reductions contained in these bills. Before the agency finished reviewing the amendments, how­ever, groups of Medicaid providers and beneficiaries filed a series of lawsuits seeking to enjoin the rate reductions on the ground that they conflicted with, and therefore were pre­empted by, federal Medicaid law, in particular the statutory provision that we have just set forth. They argued that California’s Medicaid plan amendments were inconsistent with the federal provision because the State had failed to study whether the rate reductions would be consistent with the statutory factors of efficiency, economy, quality, and ac­cess to care. In effect, they argued that California had not shown that its Medicaid plan, as amended, would “enlist enough providers” to make Medicaid “care and services” suf­ficiently available. 42 U. S. C. § 1396a(a)(30)(A).
The consolidated cases before us encompass five lawsuits brought by Medicaid providers and beneficiaries against state officials. Those cases produced seven decisions of the Court of Appeals for the Ninth Circuit. See 572 F. 3d 644 (2009); 342 Fed. Appx. 306 (2009); 596 F. 3d 1098 (2010); 563 F. 3d 847 (2009); 374 Fed. Appx. 690 (2010); 596 F. 3d 1087 (2010); and 380 Fed. Appx. 656 (2010). The decisions ulti­mately affirmed or ordered preliminary injunctions that prevented the State from implementing its statutes. They (1) held that the Medicaid providers and beneficiaries could directly bring an action based on the Supremacy Clause; (2) essentially accepted the claim that the State had not dem­onstrated that its Medicaid plan, as amended, would provide sufficient services; (3) held that the amendments conse­quently conflicted with the statutory provision we have quoted; and (4) held that, given the Constitution’s Supremacy Clause, the federal statute must prevail. That is to say, the federal statute pre-empted the State’s new laws.
*613 In the meantime, the federal agency was also reviewing the same state statutes to determine whether they satisfied the same federal statutory conditions. In November 2010, agency officials concluded that they did not satisfy those conditions, and the officials disapproved the amendments. California then exercised its right to further administrative review within the agency. The cases were in this posture when we granted certiorari to decide whether respondents could mount a Supremacy Clause challenge to the state stat­utes and obtain a court injunction preventing California from implementing its statutes.
About a month after we heard oral argument, the federal agency reversed course and approved several of California’s statutory amendments to its plan. See Letter from Donald M. Berwick, Administrator, CMS, to Toby Douglas, Director, Cal. Dept, of Health Care Servs. (Oct. 27, 2011); Letter from Larry Reed, Director, Division of Pharmacy, Disabled and Elderly Health Programs Group, CMS, to Toby Douglas, Di­rector, Cal. Dept, of Health Care Servs. (Oct. 27, 2011). In doing so, the agency also approved a limited retroactive im­plementation of some of the amendments’ rate reductions. The State, in turn, withdrew its requests for approval of the remaining amendments, in effect agreeing (with one excep­tion) that it would not seek to implement any unapproved reduction. See Letter from Michael E. Kilpatrick, Assistant Chief Counsel, Cal. Dept, of Health Care Servs., to Benjamin R. Cohen, Director, Office of Hearings, CMS (Oct. 27, 2011). (The exception consists of one statute for which California has submitted no amendment and which, by its own terms, cannot take effect unless and until this litigation is complete, see 2010 Cal. Sess. Laws eh. 725, §25.)
r-i ( — I
All parties agree that the agency s approval of the en­joined rate reductions does not make these cases moot. For one thing, the providers and beneficiaries continue to believe that the reductions violate the federal provision, the agency’s *614 view to the contrary notwithstanding. For another, federal-­court injunctions remain in place, forbidding California to implement the agency-approved rate reductions. And, in light of the agency’s action, California may well ask the lower courts to set those injunctions aside.
While the cases are not moot, they are now in a different posture. The federal agency charged with administering the Medicaid program has determined that the challenged rate reductions comply with federal law. That agency deci­sion does not change the underlying substantive question, namely, whether California’s statutes are consistent with a specific federal statutory provision (requiring that reim­bursement rates be “sufficient to enlist enough providers”). But it may change the answer. And it may require respond­ents now to proceed by seeking review of the agency deter­mination under the Administrative Procedure Act (APA), 5 U. S. C. § 701 et seq., rather than in an action against Califor­nia under the Supremacy Clause.
For one thing, the APA would likely permit respondents to obtain an authoritative judicial determination of the mer­its of their legal claim. The Act provides for judicial review of final agency action. §704. It permits any person ad­versely affected or aggrieved by agency action to obtain judi­cial review of the lawfulness of that action. § 702. And it requires a reviewing court to set aside agency action found to be “arbitrary, capricious, an abuse of discretion, or other­wise not in accordance with law.” § 706(2)(A).
For another thing, respondents’ basic challenge now pre­sents the kind of legal question that ordinarily calls for APA review. The Medicaid Act commits to the federal agency the power to administer a federal program. And here the agency has acted under this grant of authority. That deci­sion carries weight. After - all, the agency is comparatively expert in the statute’s subject matter. And the language of the particular provision at issue here is broad and general, suggesting that the agency’s expertise is relevant in deter­mining its application.
*615 Finally, to allow a Supremacy Clause action to proceed once the agency has reached a decision threatens potential inconsistency or confusion. In these cases, for example, the Ninth Circuit, in sustaining respondents’ challenges, declined to give weight to the Federal Government’s interpretation of the federal statutory language. (That view was ex­pressed in an amicus curiae brief that the United States submitted in prior litigation.) See Independent Living Cen­ter of Southern Cal., Inc. v. Maxwell-Jolly, 572 F. 3d 644, 654 (CA9 2009) (referring to the United States’ certiorari-­stage invitation brief in Belshe v. Orthopaedic Hospital, 522 U. S. 1044 (1998) (denying writ of certiorari)). And the Dis­trict Court decisions that underlie injunctions that now for­bid California to implement its laws may rest upon similar analysis.
But ordinarily review of agency action requires courts to apply certain standards of deference to agency decision-­making. See National Cable & Telecommunications Assn. v. Brand X Internet Services, 545 U. S. 967 (2005) (describing deference reviewing courts must show); Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837 (1984) (same). And the parties have not suggested rea­sons why courts should not now (in the changed posture of these cases) apply those ordinary standards of deference.
Nor have the parties suggested reasons why, once the agency has taken final action, a court should reach a different result in a case like these, depending upon whether the case proceeds in a Supremacy Clause action rather than under the APA for review of an agency decision. Indeed, to permit a difference in result here would subject the States to conflict­ing interpretations of federal law by several different courts (and the agency), thereby threatening to defeat the uniform­ity that Congress intended by centralizing administration of the federal program in the agency and to make superfluous or to undermine traditional APA review. Cf. Astra USA, Inc. v. Santa Clara County, 563 U. S. 110, 114 (2011) (noting that the treatment of lawsuits that are “in substance one and *616 the same” “must be the same, ‘[n]o matter the clothing in which [plaintiffs] dress their claims’ ” (quoting Tenet v. Doe, 544 U. S. 1, 8 (2005))). If the two kinds of actions should reach the same result, the Supremacy Clause challenge is at best redundant. And to permit the continuation of the ac­tion in that form would seem to be inefficient, for the agency is not a participant in the pending litigation below, litigation that will decide whether the agency-approved state rates violate the federal statute.
I — l I — I hH
In the present posture of these cases, we do not address whether the Ninth Circuit properly recognized a Supremacy Clause action to enforce this federal statute before the agency took final action. To decide whether these cases may proceed directly under the Supremacy Clause now that the agency has acted, it will be necessary to take account, in light of the proceedings that have already taken place, of at least the matters we have set forth above. It must be recognized, furthermore, that the parties have not fully ar­gued this question. Thus, it may be that not all of the con­siderations that may bear upon the proper resolution of the issue have been presented in the briefs to this Court or in the arguments addressed to and considered by the Court of Appeals. Given the complexity of these cases, rather than ordering reargument, we vacate the Ninth Circuit’s judg­ments and remand the cases, thereby permitting the parties to argue the matter before that Circuit in the first instance.

It is so ordered.