# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10396

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2014

Lyle W. Cayce
Clerk

SCOTT DETGEN, by His Next Friend, L.C. Detgen;
JUANITA BARRAZA, by Her Next Friend, Yolanda Villareal;
BRANDON DOYEL; JOSHUA VARGAS,

Plaintiffs–Appellants,

versus

DR. KYLE JANEK, in His Official Capacity
as Executive Commissioner, Texas Health and Human Services Commission,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, SMITH, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The four plaintiffs are Medicaid beneficiaries with near total physical disabilities, requiring constant personal assistance and care. On the advice of professionals, they asked Texas's Health and Human Services Commission to pay for ceiling lifts, which are classified as durable medical equipment ("DME"). Such lifts are expensive but would allow the disabled beneficiaries

No. 13-10396

to move with straps attached to ceilings. Texas denied coverage under a categorical exclusion in the state's implementing Medicaid regulations. The district court granted summary judgment for the state on the ground that, so long as federal monies were not available to reimburse it, it did not need to provide the lifts.

The Center for Medicare and Medicaid Services ("CMS") has since offered guidance, however, that federal financial participation would be available. In addition to appealing the judgment, the plaintiffs move this court to vacate it for reconsideration. In the appeal, they maintain that the state's categorical exclusions are preempted by federal law or otherwise violate their procedural due-process rights. Texas responds that categorical exclusions are not preempted and, moreover, that a state can never violate the Medicaid Act and that the plaintiffs do not have a private cause of action to enforce it.

Under binding precedent, these plaintiffs have an implied private cause of action under the Supremacy Clause to pursue this challenge. We additionally note that the state must comply with the requirements of the Medicaid Act, but the Act does not preempt the state's categorical exclusions. We therefore affirm the summary judgment and deny the motion to vacate.

I.

The plaintiffs assert that they have an implied cause of action to pursue their claims. Normally a cause of action must be found in a statute: "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The plaintiffs' theory of an implied cause of action does not depend on any rights-creating language in the Medicaid Act; rather, they rely on the

No. 13-10396

Supremacy Clause.[1]   The Supreme Court recently dodged the question—incidentally in a case involving the Medicaid Act—whether the Supremacy Clause provides a cause of action itself in the absence of a statutory private cause of action.  *See Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204 (2012).

In light of the Court's failure in *Douglas* to hold to the contrary, this appeal is governed by *Planned Parenthood of Houston & Southeast Texas v. Sanchez ("PPHST")*, 403 F.3d 324, 330–35 (5th Cir. 2005).  There this court held that the Supremacy Clause confers an implied private cause of action to enforce all Spending Clause legislation by bringing preemption actions.[2]  The state is correct that since then, the Supreme Court has held that certain federal statutes contain no private right of action,[3] but that was true when *PPHST* was decided.  *See, e.g.*, *Sandoval*, 532 U.S. at 288–93.  In *Sandoval*, *Horne*, and *Brunner*, it appears that the plaintiffs never made the alternative claim that if the statute does not provide a cause of action, the Supremacy Clause does.[4]

## II.

The state makes the alternative argument that even if plaintiffs have a

---

[1] Plaintiffs rely on 42 U.S.C. § 1983 for their due-process claims.

[2] *PPHST*, 403 F.3d at 333 ("While [prior cases] do not directly address the issue of whether a valid cause of action existed [under the Supremacy Clause], we assumed that one did.  Today we hold that one does.  Other circuits have similarly recognized an implied cause of action to bring preemption claims seeking injunctive and declaratory relief even absent an explicit statutory claim.").

[3] *See, e.g.*, *Horne v. Flores*, 557 U.S. 433, 456 n.6 (finding no private cause of action to enforce the No Child Left Behind Act); *Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (suggesting no private cause of action to enforce the Help America Vote Act).

[4] The Tenth Circuit has only recently come to the opposite conclusion.  *See Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 12-3178, 2014 WL 1201488 (10th Cir. Mar. 25, 2014) (holding that the Supremacy Clause does not provide a private cause of action).

cause of action, it is impossible for a state to violate the Medicaid Act. The state analogizes the Act to legislation tying highway funds to a certain maximum speed limit: A state may lawfully establish a higher limit, but it will forgo funds. Thus, the state claims, here it may lawfully pass nonconforming Medicaid legislation at the risk of losing federal funds, but not at the risk of private lawsuits. It reasons that unlike other legislation that can preempt state law, this federal law does not include language such as "shall," commanding a state to perform a certain function.

The provision on which plaintiffs rely, however, does contain such language: "A State plan for medical assistance *must* . . . include reasonable standards . . . for determining eligibility . . . . " 42 U.S.C. § 1396a(a)) (emphasis added). Additionally, several courts, including the Supreme Court, have held that once a state accepts federal funding, it must conform to the requirements of the relevant federal law, including the Medicaid Act: "Although participation in the Medicaid program is entirely optional, once a State elects to participate, it must comply with the requirements of Title XIX." *Harris v. McRae*, 448 U.S. 297, 301 (1980); *see also Hope Med. Grp. for Women v. Edwards*, 63 F.3d 418, 421 (5th Cir. 1995).

Indeed, a contrary ruling would contradict *PPHST*, which held that there is an implied private cause of action under the Supremacy Clause to enforce all Spending Clause legislation. Under the state's theory, the holding in *PPHST* would have been totally unnecessary because it is impossible for a state to violate a Spending Clause statute, so a private cause of action does plaintiffs no good. We agree that if no private cause of action existed, it would be up to the federal government to decide how to enforce compliance, and it could choose to withhold funds. That, indeed, is how at least two Supreme

4

No. 13-10396

Court Justices would interpret the Medicaid Act.[5]  But this court in *PPHST*, 403 F.3d at 332 & n.34, specifically discounted those two views in coming to its conclusion.  Although it is quite possible, as Texas maintains, that no state has made such an argument, *PPHST* necessarily (even if implicitly) directs that when a state violates the federal requirements of the Medicaid Act, a private plaintiff can sue the state to enforce those requirements.

### III.

Regarding the merits, the basis for this challenge is the requirement that "[a] State plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan . . . which are consistent with the objectives of this subchapter," 42 U.S.C. § 1396a(a)(17), and the implementing regulation requiring that each provided service "must be sufficient in amount, duration, and scope to reasonably achieve its purpose," 42 C.F.R. § 440.230(b).  The plaintiffs rely on this statutory language, an agency guidance letter, and precedent to contend that the state's categorical exclusion is not a "reasonable standard."

States have broad discretion to implement the Medicaid Act:  "This

---

[5] *See Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 675 (2003) (Scalia, J., concurring in the judgment) ("I would reject petitioner's statutory claim on the ground that the remedy for the State's failure to comply with the obligations it has agreed to undertake under the Medicaid Act is set forth in the Act itself: termination of funding by the Secretary of the Department of Health and Human Services.  Petitioner must seek enforcement of the Medicaid conditions by that authority . . . ." (internal citations omitted)); *id.* at 682 (Thomas, J., concurring in the judgment) ("[T]he Secretary's mandate from Congress is to conduct, with greater expertise and resources than courts, the inquiry into whether [state law] upsets the balance contemplated by the Medicaid Act.  Congress' delegation to the agency to perform this complex balancing task precludes federal-court intervention on the basis of obstacle pre-emption—it does not bar the Secretary from performing his duty to adjudge whether [the State's law] upsets the balance the Medicaid Act contemplates and withhold approval or funding if necessary.").

[statutory] language confers broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Beal v. Doe*, 432 U.S. 438, 444 (1977). In combination with the presumption against preemption and its concomitant clear-statement rule, the discretion conferred in *Doe* leaves little doubt that we must affirm the summary judgment if the statutory language does not plainly prohibit categorical exclusions.

As we have noted, the statute requires that "[a] State plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan." Additionally, the Medicaid Act requires a state program to cover "home health services," 42 U.S.C. § 1396a(a)(10)(D), which include "[m]edical supplies, equipment, and appliances suitable for use in the home," 42 C.F.R. § 440.70(b)(3). But, as plaintiffs acknowledge, the Act does not identify the specific equipment that a state must offer, and the scope of offerings is governed by the "reasonableness" standard in the statute. Plaintiffs maintain that the categorical exclusion of ceiling lifts is unreasonable because ceiling lifts fall within the *state*'s definition of DME and are medically necessary.

The state categorically excludes such lifts from coverage for a number of reasons. Although the district court specifically relied on the lack of federal financial assistance for its ruling—a ruling that is undermined by subsequent CMS guidance to the contrary—the state also flatly excludes such lifts because they require structural modifications to residences. Texas also excludes from the definition of DME, in the home services category, ramps, elevators, stair-well lifts, and platform lifts. Further, the state explains in its brief that it provides more cost-effective alternatives such as "transfer boards, freestanding track (or 'Niklas') lifts, transfer chair systems for use with the bath or

commode, and manually or electronically operated floor lifts (also known as 'Hoyer' lifts)." The ceiling lifts at issue here would cost the state between $15,000 and $20,000, and even the insurers Aetna and Cigna deny coverage for such equipment.

It is hardly unreasonable for a state to exclude—even categorically—any medical device whose purpose can be served by a more cost-effective method. Not only has Texas not violated the plain language of the statute, but also the reasonableness standard in the text likely supports its imposition of *reasonable* categorical exclusions. The plaintiffs' notion that it would be unreasonable for a state not to provide particular equipment *within its definition* of DME sounds plausible, except that the state can choose *by definition* to exclude ceiling lifts.[6] Moreover, a categorical exclusion based on the availability of cost-effective alternatives cannot mean that the state has denied a medically necessary device, even if the statute did impose such a standard.

Plaintiffs rely heavily on a 1998 guidance letter from CMS's predecessor (the "*DeSario* letter") to support their assertions. The letter explains that a state may "develop a list of pre-approved items of [medical equipment] as an administrative convenience," but a "policy that provides no reasonable and meaningful procedure for requesting items that do not appear on a State's pre-approved list [ ] is inconsistent with federal law."[7]

---

[6] The state defines DME at a high level of generality, saying that it includes equipment with a projected term of use of more than one year or if the reimbursement is over $1,000. 1 TEX. ADMIN. CODE § 354.1031(b)(2). But Texas's Medicaid Provider Procedures Manual explains that not all DME will be considered reimbursable as a home health service; rather, the DME must meet a list of criteria after which it "may" be a covered benefit. Section 2.2.14.27 of the manual specifically excludes many DMEs, including home modifications.

[7] Letter from Sally K. Richardson, Director, Ctr. for Medicaid and State Operations, Dep't of Health & Human Servs. to State Medicaid Directors (Sept. 4, 1998), *available at* http://downloads.cms.gov/cmsgov/archived-downloads/SMDL/downloads/SMD090498.pdf.

Deference to the guidance letter is not an issue, because the state has not violated its requirements:  The letter says only that if a state has a pre-approved list, there must be some way to prove need for items not on it.  This letter says nothing about the possibility of a state's deciding that some items shall be on a "never approved list," that is, that some items may be categorically excluded.  It would be perfectly consistent with federal law and this letter to adopt a list of pre-approved devices for convenience and a list of categorical exclusions if based on reasonable grounds, such as the availability of more cost-effective alternatives, and to permit a beneficiary to demonstrate need for an item on neither list.  In short, nothing in the *DeSario* letter prohibits categorical exclusions, which might even be eminently reasonable and thus consistent with the statutory language.

Contrary to the plaintiffs' assertions, no decision of this court prohibits categorical exclusions, and none of the cases they cite is on point.  Our decision in *Rush v. Parham*, 625 F.2d 1150, 1157 n.12 (5th Cir. 1980), merely stands for the proposition that a state cannot deny a treatment solely based on "diagnosis, type of illness, or condition," which is an explicit requirement of the Code of Federal Regulations.  As for *Hope Medical Group*, an important distinction is that there the treatment in question was generally available, but the state had limited its availability for non-medical reasons.  *See Hope Med. Grp.*, 63 F.3d at 427.  That situation is thus distinguishable from a categorical exclusion of an item, which might be based on a reasonable ground such as the availability of more cost-effective alternatives.

The plaintiffs rely most heavily on *Fred C. v. Texas Health & Human Services Commission*, 988 F. Supp. 1032 (W.D. Tex. 1997), *aff'd*, 167 F.3d 537 (5th Cir. 1998).  Plaintiffs aver that that case stands for the proposition that if the state's Medicaid program provides a medical service or device for an

individual under age twenty-one, it must also provide that service, if medically necessary, to a person over that age. Such an outcome would benefit the plaintiffs because the state provides ceiling lifts to those younger than twenty-one.

As the state contends here, however, even if *Fred C.* could be read for that proposition, it would be absurd: The states are *required* by federal law to provide any and all services to individuals under twenty-one if medically necessary, "whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5). But if states do so and therefore must also so provide for anyone over twenty-one, the special federal rule for the provision of more expansive benefits to children would be unnecessary because the standards for children and the standards for adults would be collapsed into the same standard. The plaintiffs' reading would render superfluous the language "whether or not such services are covered under the State plan," which suggests that the states must be able to offer *some* benefits to children that they do not have to offer adults.

We need not read *Fred C.* as plaintiffs wish. There the district court had held that a device provided for children under twenty-one must also be provided to adults as medically necessary. On the second appeal, we affirmed because the district court was governed by the "law of the case" as established by a previous short per curiam opinion, *Fred C. v. Texas Health & Human Services Commission*, 117 F.3d 1416 (5th Cir. 1997). In that first appeal the court had remanded for a determination of whether the plaintiff was even eligible for home services; we implied that if that requirement was met, he would be eligible. The court never actually addressed the merits of the district court's age-based reasoning, and it never *held* (although it may have assumed) as the district court did that because the device was provided for children under twenty-one, it must also be provided to adults.

9

No. 13-10396

Moreover, we later noted that, although a state must provide certain benefits to children under twenty-one, it need not provide those same benefits to adults:

Further, the § 1396d(a)(7) category of home health care services is an optional, not a mandatory, category of medical assistance. § 1396a(a)(10)(A). Thus, the state was not required to provide this category of care and services to individuals over the age of twenty-one at all. . . . CMS's approval of the effective exclusion indicates only that the exclusion may be an appropriate limitation on the scope of the home health care benefit as it applies to recipients over twenty-one years of age. It does not express or imply that CMS has approved an exclusion applicable to EPSDT benefits [for children].

*S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 597 (5th Cir. 2004). Therefore, plaintiffs' reading of *Fred C.* is not how this court has subsequently interpreted the law respecting Medicaid, and it is not how we construe it now.

Because plaintiffs have not shown an entitlement to the ceiling lifts, their due process claims fail as well. The summary judgment is AFFIRMED, and the motion to vacate is DENIED.