**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-2176

VIRGINIA HOSPITAL & HEALTHCARE ASSOCIATION; THE MEDICAL
SOCIETY OF VIRGINIA; VIRGINIA COLLEGE OF EMERGENCY
PHYSICIANS,

Plaintiffs – Appellants,

v.

KAREN KIMSEY, in her official capacity as Director of the Virginia Department
of Medical Assistance Services,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at
Richmond. Henry E. Hudson, Senior District Judge. (3:20-cv-00587-HEH)

Argued: March 11, 2021                    Decided: March 1, 2022

Before KING, WYNN, and HARRIS, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge King wrote the opinion, in which
Judge Wynn and Judge Harris joined.

**ARGUED:** Michael B. Kimberly, MCDERMOTT WILL & EMERY, LLP, Washington,
D.C., for Appellants. Michelle Shane Kallen, OFFICE OF THE ATTORNEY GENERAL
OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Matthew A. Waring,
MCDERMOTT WILL & EMERY LLP, Washington, D.C., for Appellants. Mark R.
Herring, Attorney General, Samuel T. Towell, Deputy Attorney General, Keonna C.
Austin, Deputy Attorney General, Kim F. Piner, Senior Assistant Attorney General, Calvin

C. Brown, Assistant Attorney General, Usha Koduro, Assistant Attorney General, Toby J. Heytens, Solicitor General, Jessica Merry Samuels, Deputy Solicitor General, Kendall T. Burchard, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

The Virginia Hospital & Healthcare Association, the Medical Society of Virginia, and the Virginia College of Emergency Physicians (collectively, the "Plaintiffs") initiated this civil action in the Eastern District of Virginia against Karen Kimsey, in her official capacity as Director of the Virginia Department of Medical Assistance Services (the "Director"). *See Va. Hosp. & Healthcare Ass'n v. Kimsey*, No. 3:20-cv-00587 (E.D. Va. July 30, 2020), ECF No. 1 (the "Complaint"). By their Complaint, the Plaintiffs seek declaratory and injunctive relief concerning two amendments — referred to herein as the "Downcoding Provision" and the "Readmission Provision" — made in 2020 to Virginia's Medicaid plan. Those Provisions were enacted to curtail reimbursements to physicians and hospitals for healthcare provided to Medicaid beneficiaries in hospitals and their emergency rooms. In relevant part, the Complaint alleges two claims under 42 U.S.C. § 1983: first, that the Downcoding and Readmission Provisions deprive physicians and hospitals of the just compensation required by the Fifth Amendment's Takings Clause (the "Takings Claim"); and, second, that the Downcoding Provision is preempted by federal law (the "Preemption Claim").

For reasons set forth in its Memorandum Opinion of October 7, 2020, the district court dismissed the Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of Article III standing to sue and denied as moot the Plaintiffs' motion for preliminary injunctive relief. *See Va. Hosp. & Healthcare Ass'n v. Kimsey*, No.

3

3:20-cv-00587 (E.D. Va. Oct. 7, 2020), ECF No. 24 (the "Opinion").[1] As explained herein, we vacate the dismissals of the Takings Claim and the Preemption Claim and remand for further proceedings.

I.

A.

The Medicaid program — which "functions as a partnership between the federal government and the states" — is "[d]esigned to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary medical care." *See Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs.*, 542 F.3d 424, 429 (4th Cir. 2008). In exchange for the federal government's funding of a share of the costs of providing healthcare to Medicaid beneficiaries, the States are obliged to comply with the federal Medicaid Act, as well as regulations promulgated by the federal Centers for Medicare and Medicaid Services ("CMS"). *Id.* The States also "must submit to [CMS] a state Medicaid plan that details the nature and scope of the State's Medicaid program." *See Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 610 (2012). If a State wishes to amend its Medicaid plan, it is required to submit the proposed changes to CMS for approval. *Id.*

In Virginia, the Medicaid program is administered by the Commonwealth's Department of Medical Assistance Services ("DMAS"), which is headed by its Director,

---

[1] The district court's Opinion is published at 493 F. Supp. 3d 488 (E.D. Va. 2020).

the defendant in this litigation. To provide healthcare coverage under Virginia's Medicaid program, DMAS contracts with managed care organizations (the "MCOs"). The MCOs arrange healthcare for their enrollees and assume the obligation to cover the reimbursable costs of the enrollees' healthcare.

Under the federal Medicaid Act and a pertinent regulation, the MCOs are required "to provide coverage for emergency services." *See* 42 U.S.C. § 1396u-2(b)(2)(A)(i); *see also* 42 C.F.R. § 438.114(c)(1) (specifying, inter alia, that the MCOs "[m]ust cover and pay for emergency services"). Emergency services include those "needed to evaluate or stabilize an emergency medical condition." *See* 42 U.S.C. § 1396u-2(b)(2)(B)(ii). And, an emergency medical condition is "a medical condition manifesting itself by acute symptoms of sufficient severity . . . such that a prudent layperson, who possesses an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to [have certain serious adverse results]." *Id.* § 1396u-2(b)(2)(C).

Meanwhile, a separate federal statute broadly requires hospitals to provide a medical screening examination and stabilizing treatment to any person who seeks care in a hospital emergency room, regardless of the patient's ability to pay. *See* 42 U.S.C. § 1395dd. The physicians and hospitals who provide emergency services to Virginia's Medicaid beneficiaries are reimbursed by the MCOs on the basis of fee schedules that utilize the American Medical Association's Current Procedural Terminology coding system (the "CPT").

The five CPT codes used for emergency room encounters are codes 99281, 99282, 99283, 99284, and 99285. As explained in the Complaint, code 99281 is the lowest emergency room code (Level 1). It covers services such as those required by a patient presenting in an emergency room "with several uncomplicated insect bites." *See* Complaint ¶ 67(a) (internal quotation marks omitted). Code 99285 is the highest emergency room code (Level 5). It corresponds with highly complex medical needs, such as those of "a patient who is injured in an automobile accident and is brought to the emergency department immobilized and has symptoms compatible with intra-abdominal injuries or multiple extremity injuries." *Id.* ¶ 67(e) (internal quotation marks omitted). Codes 99282 (Level 2), 99283 (Level 3), and 99284 (Level 4) are used for emergency room encounters with complexities between the two extremes. Because the higher CPT codes correspond with greater complexity, they are reimbursed at higher rates.

B.

On April 22, 2020, the Virginia General Assembly convened for a one-day legislative session to reconsider bills that had been vetoed by the Governor. In that session, the General Assembly approved a reduced state budget. Among the budget items adopted were the two Medicaid program cost-cutting measures — the Downcoding Provision and the Readmission Provision — that underlie this litigation. Those Provisions were proposed by DMAS as amendments to the Virginia Medicaid plan, and they became effective on July 1, 2020.

The Downcoding Provision instructs DMAS to "amend the State [Medicaid] Plan . . . to allow the . . . reviewing and the reducing of fees for avoidable emergency room

6

claims for [CPT] codes 99282, 99283 and 99284" by utilizing an "avoidable emergency room diagnosis code list." *See* 2020 Va. Acts ch. 1289, at 369. That list contains nearly 800 diagnoses and covers multiple serious conditions, such as heart failure. Pursuant to the Downcoding Provision, if any "emergency room claim is identified as [an avoidable] emergency room diagnosis, [DMAS] shall direct the [MCO] to default to the payment amount for code 99281." *Id.* The Downcoding Provision thereby requires the MCOs to determine — after the fact — whether an emergency room visit by a Virginia Medicaid beneficiary was avoidable, based on the patient's final diagnosis, rather than on the patient's presenting symptoms. If the emergency room visit is found to be avoidable, by reference to DMAS's list of avoidable diagnoses, the MCO is required to downcode the emergency room visit to code 99281 (Level 1). And that downcoding is mandated even when, consistent with the Medicaid Act's "prudent-layperson standard" of 42 U.S.C. § 1396u-2(b)(2)(C), the physicians and hospitals have furnished more extensive services covered by higher CPT codes.

Meanwhile, the Readmission Provision instructs DMAS to "amend the State [Medicaid] Plan . . . to modify the definition of readmissions to include cases when patients are readmitted to a hospital for the same or a similar diagnosis within 30 days of discharge," subject to a few exceptions. *See* 2020 Va. Acts ch. 1289, at 369. According to the Readmission Provision, "[i]f the patient is readmitted to the same hospital for a potentially preventable readmission then the payment for such cases shall be paid at 50 percent of the normal rate," excepting "a readmission within five days of discharge." *Id.*

7

## C.

### 1.

On July 30, 2020, 30 days after the Downcoding and Readmission Provisions became effective, the Plaintiffs initiated this civil action against the Director. The Complaint alleges the two claims at issue in this appeal — the Takings Claim (challenging both the Downcoding Provision and the Readmission Provision) and the Preemption Claim (contesting the Downcoding Provision only).[2] According to the Plaintiffs, the challenged Provisions "will confiscate more than $55 million per year from Virginia hospitals and physician practices." *See* Complaint ¶ 111.

In their Takings Claim, the Plaintiffs assert that the Downcoding and Readmission Provisions violate the Fifth Amendment's Takings Clause because they deprive Virginia's physicians and hospitals of just compensation for healthcare services that have been taken by the Commonwealth. The Plaintiffs maintain that the Downcoding Provision denies just compensation for federally-mandated emergency services by predicating reimbursements on the final diagnosis only — and not on the services actually provided. Additionally, the Plaintiffs contend that the Readmission Provision denies just compensation by reimbursing only one-half the normal rate for healthcare provided to many Medicaid patients readmitted to a hospital.

---

[2] The Complaint also alleges a second preemption claim, challenging the Downcoding and Readmission Provisions. The district court's dismissal of that claim is not contested on appeal.

8

By their Preemption Claim, pursued under the Supremacy Clause of the Constitution, the Plaintiffs assert that the Downcoding Provision is preempted by federal law, specifically 42 U.S.C. § 1396u-2(b)(2) and 42 C.F.R. § 438.114(c)(1). Under the Plaintiffs' theory of preemption, the "MCOs and DMAS cannot comply with both federal law and the Downcoding Provision," in that the Downcoding Provision "directs MCOs to deny [physicians and hospitals] full payment for emergency medical services provided in circumstances where federal law and the prudent-layperson standard require full coverage for those services." *See* Complaint ¶ 139.

2.

Shortly after filing their Complaint, the Plaintiffs submitted a motion for a preliminary injunction, which the Director opposed. The Director also moved to dismiss the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. In the memorandum in support of her motion to dismiss, the Director raised a variety of grounds under both Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

As relevant here, the Director maintained that she is entitled to Eleventh Amendment immunity with respect to the Plaintiffs' Takings Claim, on the premise that "the only type of relief authorized under a takings claim is just compensation and retrospective monetary relief is prohibited under the Eleventh Amendment." *See Va. Hosp. & Healthcare Ass'n v. Kimsey*, No. 3:20-cv-00587, at 25 (E.D. Va. Aug. 26, 2020), ECF No. 15. In other words, the Director argued that the Plaintiffs cannot obtain the relief — prospective injunctive relief — that they seek in connection with their Takings Claim. For

their part, the Plaintiffs responded that "where (as here) a state statute effects an ongoing, regulatory denial of just compensation, a plaintiff may seek an injunction against officials' enforcement of the statute pursuant to the Takings Clause." *See Va. Hosp. & Healthcare Ass'n v. Kimsey*, No. 3:20-cv-00587, at 11 (E.D. Va. Sept. 9, 2020), ECF No. 20. In reply, the Director proffered that the Supreme Court's recent decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), "conclusively forecloses" the Plaintiffs' request for injunctive relief. *See Va. Hosp. & Healthcare Ass'n v. Kimsey*, No. 3:20-cv-00587, at 12 (E.D. Va. Sept. 15, 2020), ECF No. 22.

Pertinent to the Preemption Claim, the Director asserted that the Plaintiffs lack Article III standing to sue. That is so, according to the Director, because neither 42 U.S.C. § 1396u-2(b)(2) nor 42 C.F.R. § 438.114(c)(1) creates a private right of action enforceable by the Plaintiffs under 42 U.S.C. § 1983.

3.

In addressing the Plaintiffs' Takings Claim in its Opinion of October 7, 2020, the district court observed that "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *See* Opinion 6 (quoting *Knick*, 139 S. Ct. at 2176). The court then ruled that the "Plaintiffs are foreclosed from seeking injunctive relief under [their Takings Claim] because they may bring an action seeking just compensation." *Id.* at 7. Notably, the court neither identified the cause of action that it believed the Plaintiffs could instead pursue, nor confronted their theory that an injunction may be appropriate where there is "an ongoing, regulatory denial of just compensation." Moreover, rather than characterizing its ruling as an issue of

10

Eleventh Amendment immunity (as urged by the Director), the court specified that the Plaintiffs lack Article III standing to sue because their alleged injury cannot "be 'redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Turning to the Preemption Claim, the district court agreed with the Director that the Plaintiffs lack Article III standing to sue in the absence of a private right of action under 42 U.S.C. § 1396u-2(b)(2) or 42 C.F.R. § 438.114(c)(1). *See* Opinion 7 (again attributing the Plaintiffs' lack of standing to an "alleged injury . . . not redressable by this Court"). Ultimately, the court dismissed the Complaint in its entirety under Rule 12(b)(1) for want of Article III standing — and thus lack of subject matter jurisdiction — and denied as moot the Plaintiffs' motion for a preliminary injunction.[3]

D.

The Plaintiffs timely noted this appeal, invoking our jurisdiction under 28 U.S.C. § 1291 and seeking reinstatement of the Takings and Preemption Claims. When the appeal was briefed and argued before us, a federally mandated review of the Downcoding and Readmission Provisions by CMS was pending. Significantly, however, the Director has

---

[3] Whether the district court's grounds for dismissing the Takings and Preemption Claims were, as the court thought, Rule 12(b)(1) issues of Article III standing — or were instead Rule 12(b)(6) issues of the viability of those Claims — is a question that we acknowledge but need not resolve today. *See, e.g.*, *Norfolk S. Ry. Co. v. Brotherhood of Locomotive Eng'rs*, 217 F.3d 181 (4th Cir. 2000) (affirming Rule 12(b)(6) dismissal of claim for lack of requested damages remedy); *Carey v. Throwe*, 957 F.3d 468 (4th Cir. 2020) (affirming Rule 12(b)(6) dismissal of 42 U.S.C. § 1983 claim for lack of private right of action).

since advised us that, on December 22, 2021, CMS completed its review and "approved the state plan amendments at issue in this case." *See Va. Hosp. & Healthcare Ass'n v. Kimsey*, No. 20-2176 (4th Cir. Dec. 24, 2021), ECF No. 40. In light of that development, the Director maintains that, pursuant to *Douglas v. Independent Living Center of Southern California, Inc.*, 565 U.S. 606 (2012), the Plaintiffs' Preemption Claim should now proceed under the Administrative Procedure Act (the "APA"). The Plaintiffs do not dispute that CMS has approved the Downcoding and Readmission Provisions or that their Preemption Claim should now proceed under the APA.

II.

A.

We first address the Plaintiffs' challenge to the district court's dismissal of their Takings Claim. The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." *See* U.S. Const. amend. V. In dismissing the Plaintiffs' Takings Claim, the district court relied on *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019). There, the Supreme Court overruled its earlier decision imposing a "state-litigation requirement" before a litigant could bring a takings claim under 42 U.S.C. § 1983 in federal court. *See Knick*, 139 S. Ct. at 2167 (overruling *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)). In so doing, the Court recognized that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id.*

12

Of particular relevance in these proceedings, the *Knick* Court also underscored that "[s]o long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities." *See* 139 S. Ct. at 2168. Further addressing the availability of injunctive relief aimed at stopping a taking from ever occurring, the Court explained:

> [B]ecause the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable. As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking.

*Id.* at 2176.

Here, the district court ruled that the "Plaintiffs are foreclosed from seeking injunctive relief under [their Takings Claim] because they may bring an action seeking just compensation." *See* Opinion 7. But it did so without identifying any alternative cause of action, much less examining the adequacy thereof. Furthermore, the court failed to address the Plaintiffs' theory that their request for injunctive relief is proper because they seek to enjoin the ongoing denial of just compensation and not the taking itself. As the Plaintiffs have articulated in this appeal, the requested injunction is "against the state-law measures that are systematically denying [physicians and hospitals] the compensation they are justly due *for* the taking." *See* Br. of Appellants 23.

In these circumstances, we find it appropriate to vacate the district court's dismissal of the Takings Claim and remand for further proceedings so that the court may consider the Plaintiffs' theory of injunctive relief in the first instance, along with any other issues it deems appropriate, including other grounds for dismissal raised by the Director. We

emphasize that we express no opinion on the merits of the Takings Claim, the Plaintiffs' theory of injunctive relief, or the Director's grounds for dismissal.

B.

We turn to the Plaintiffs' challenge to the district court's dismissal of their Preemption Claim, which occurred while the CMS review of the Downcoding and Readmission Provisions was pending. During this appeal, however, CMS completed its review and approved those Provisions. The Supreme Court faced a similar situation in *Douglas v. Independent Living Center of Southern California, Inc.*, 565 U.S. 606 (2012), where certiorari was granted to decide whether — as the Ninth Circuit had ruled — Medicaid providers and beneficiaries had a right to bring preemption claims under the Supremacy Clause contesting amendments to California's Medicaid plan. Following oral argument and before the consolidated cases were decided by the Supreme Court, CMS approved the challenged amendments. *See Douglas*, 565 U.S. at 613. As a result, the Court observed that the cases were "now in a different posture." *Id.* at 614. More specifically, the Court recognized that the *Douglas* plaintiffs may have been required "now to proceed by seeking review of the [CMS] determination under the [APA], rather than in an action against California under the Supremacy Clause." *Id.* Without addressing the merits of the lower court's decision on the preemption claims, the Supreme Court vacated the Ninth Circuit's judgment and remanded for consideration of whether the parties instead had to proceed under the APA. *Id.* at 616.

Similarly here, because CMS has approved the Downcoding Provision challenged in the Plaintiffs' Preemption Claim, the Plaintiffs may now be obliged to proceed under

14

the APA.  Like the *Douglas* Court, we thus decline to reach or resolve the question of whether the district court correctly dismissed the Preemption Claim.  Rather, we simply vacate the dismissal and remand for consideration of the impact of the CMS action.

III.

Pursuant to the foregoing, we vacate the district court's judgment with respect to both the Takings Claim and the Preemption Claim and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*