**Max Anderson DUNLAP, Plaintiff,**

v.

**Robert K. CORBIN, the Arizona Attorney General, Defendant.**

**No. CIV 80–599 PHX CAM.**

United States District Court,
D. Arizona.

Jan. 6, 1981.

Jordan Green, P. C., Phoenix, Ariz., for plaintiff.

Stanley Patchell, Diane E. Ramsey, Asst. Atty. Gen., Phoenix, Ariz., for defendant.

## OPINION AND ORDER

MUECKE, Chief Judge.

Max Anderson Dunlap, the plaintiff, has filed a complaint claiming that the defendant's failure to provide him with a prompt trial on a formerly pending murder charge is violative of his sixth amendment right to a speedy trial.

The defendant, Robert Corbin, the Arizona Attorney General, has filed a Motion to Dismiss, alleging that the complaint fails to state a claim.

This action is commenced pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(4). As there are no material facts in issue, summary disposition of the matter is appropriate. *See* F.R.Civ.P., Rule 12(b).

Essentially, the question presented is whether the sixth amendment affords a person who has been charged, convicted and had the conviction reversed, a right to a speedy trial, where the charges are dismissed without prejudice following the reversal. A dismissal without prejudice, in this case, allows the state the absolute discretion to refile the murder charge at any time.

FACTS

On June 13, 1976, a bomb destroyed an automobile being driven by Don Bolles. Bolles, an investigative reporter for the Arizona Republic, a local daily newspaper, was on his way to an interview relating to a story he was preparing. The reporter gravely wounded, died eleven days later. The murder received attention throughout the country and resulted in the formation of a nationwide commission of newspaper people whose stated objective was to continue Bolles' work of unmasking corruption in the Phoenix area. The murder and consequent events received extensive publicity, not only from the press, but also in the electronic media.

On January 15, 1977, three persons were arrested for this murder. One of the three, John Harvey Adamson, turned state's evidence. On his testimony, Dunlap and the third were convicted of first degree murder and sentenced to die in the gas chamber. Incarcerated since his arrest, Dunlap had spent over 40 months in custody and over 2 years on death row, when his conviction was overturned by the Arizona Supreme Court.

The day after the mandate issued reversing his conviction, Dunlap filed a motion for an expedited trial date. Having maintained his innocence from the beginning, Dunlap sought a prompt trial by which he said he sought to vindicate and relieve himself, his family and friends from the notoriety and public obloquy of which he had been the subject. The motion was granted and an early trial date set.

Some three weeks before trial, the state's star witness, Adamson, informed the Attorney General's office that he would not testify in the new trial without a renegotiation of his plea agreement. The state, over Dunlap's objection, received a continuance of the trial date. Dunlap took a special action to the State Supreme Court contesting the granting of the continuance, but this action was denied.

Negotiations between Adamson and the prosecutor's office continued without success. Minutes before Dunlap's continued trial was to commence, the state obtained a dismissal of the prosecution without prejudice. The dismissal without prejudice, granted over Dunlap's objection, effectively provided the state with an unrestrained continuance.

Dunlap timely sought review of the dismissal by again taking a special action to the Arizona Supreme Court. That court declined to take jurisdiction of the petition, leaving the federal courts as his only remaining alternative for relief.

## FEDERAL ABSTENTION

■ In the Motion to Dismiss, the Attorney General suggests that Dunlap's request for relief should be denied on the grounds that federal intervention would offend the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* stands for the proposition that state courts are fully competent to adjudicate constitutional questions. Therefore, a federal court should generally refuse to interfere with an ongoing state criminal proceeding.

As the defendant has been quick to point out, however, there are currently no ongoing state proceedings. Without even a state charge pending, the federal courts may give declaratory and injunctive relief where the usual equitable tests are satisfied. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Doran v. Salem Inn Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). In this case then, this Court is not bound by *Younger* abstention considerations.

## PLAINTIFF'S RIGHT TO A SPEEDY TRIAL

■ Dunlap also claims that his sixth amendment right to a speedy trial has been violated because the state will not provide him with a prompt trial. The State Attorney General's posits that Dunlap has no charges pending against him and therefore does not have a right to a speedy trial. Dunlap's argument that he does have such a right is three-fold: (1) that the case is factually similar to *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), where the United States Supreme Court recognized such a right and granted relief accordingly; (2) that the reasons and justifications for having such a right to a speedy trial are present here; and (3) that after being once charged, the right to a speedy trial does not disengage upon the subsequent dismissal of the charge.

In *Klopfer*, the state court defendant was charged by indictment and promptly tried, the trial resulting in a mistrial. Subsequently, the state sought and obtained a *nolle prosequi*, a procedural device which had the effect of tolling the statute of limitations while providing the state with an unrestrained continuance. *Klopfer* alleged that this violated his right to a speedy trial, and like the plaintiff here, he sought to be provided with a trial. The Supreme Court agreed with *Klopfer*'s contentions finding the *nolle prosequi* violative of his right to a speedy trial.

The factual similarities between *Klopfer* and Dunlap are striking. Both were publicly charged with a crime. Both had one trial, although one ended in a mistrial and the other ended in a reversible conviction. Both were subsequently released without restriction on travel and without bail. In both cases the statute of limitations could have no effect on limiting the prosecutions. In this case, the charge is a capital offense where there is no statute of limitations, while in *Klopfer*, the *nolle prosequi* tolled the statute. In both cases the prosecution was given the sole opportunity to determine when to prosecute.

Dunlap notes that there are several distinctions between the cases, the effect of which renders his case even more egregious. The *Klopfer* court refers to the public obloquy accompanying charges of criminality. Dunlap has been the subject of enormous publicity throughout the case. While Klopfer suffered some pretrial incarceration, Dunlap was incarcerated for over 40 months, 2 years of which were spent on death row.

The state would argue that the dispositive difference between the cases is that in *Klopfer*, the state court defendant was charged with a crime, and the charge was pending, while presently Dunlap has no such charge leveled against him, charges having been dismissed. It is on this ground that the state wishes the court to deny the relief requested.

The plaintiff's position is that while there is a legal distinction, the consequence to him is absolutely no different, and that the prejudice and public obloquy resulting from his inability to go to trial is far more severe than in the case in which the Supreme Court found a constitutional violation.

The second argument advanced by Dunlap is that the facts at bar satisfy the requisites established for determining speedy trial relief. The Supreme Court has recognized that the right to a speedy trial is an important safeguard in preventing undue and oppressive incarceration prior to trial, in minimizing anxiety and concern accompanying public accusation, and in limiting the possibilities that a long delay will impair the ability of an accused to defend himself. *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

Although the plaintiff herein is released without bond or restrictions on his liberty, he has spent over three years in prison and faces the possibility that he will one day be returned to incarceration. The crime of which Dunlap has been accused is especially notorious. He has maintained his innocence throughout the proceedings, yet was convicted on the testimony of John Harvey Adamson, who has subsequently been found guilty of first degree murder for the same crime. Dunlap's conviction was reversed because of joinder with another defendant and because of his inability to fully cross-examine his chief accuser, Adamson.

Dunlap does not allege that his case has been prejudiced to date by the continuances. He asserts that the relief sought, a trial within a reasonable time, is prophylactic so that there will not be any prejudice.

The State's justification for not providing a prompt trial has been the unavailability of its key witness, due to a breakdown in plea negotiations. Dunlap characterizes this as a dispute over the "price" for which Adamson will testify.

The Attorney General's reluctance to prosecute may alternatively be considered in terms of prosecutorial discretion. In these terms, the State's position is understandable, even compelling. *See United*

*States v. Lovasco.* 431 U.S. 783, 791–96, 97 S.Ct. 2044, 2049–52, 52 L.Ed.2d 752 (1977). The *Lovasco* court noted that prosecutors are under no duty to file charges as soon as probable cause exists but only when they are satisfied that they will be able to establish a suspect's guilt beyond a reasonable doubt. While the inconveniences Dunlap faces due to his inability to quickly proceed to trial may not be insubstantial, full consideration must be given to the broad discretion invested in a prosecutor regarding when a charge is filed and a case commenced. Forcing a prosecutor to prematurely proceed to trial is not in the best interests of the parties, the public or the courts. *Id.* at 792, 97 S.Ct. at 2050.

Dunlap finally asserts that an analysis of United States Supreme Court case law supports his contention that he is entitled to relief. *Klopfer*, besides extending the right to a speedy trial to state proceedings, provides that the right can be affirmatively invoked resulting in a state being compelled to provide a prompt trial. *See also Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Braden v. Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). Dunlap also cites several cases which recognize, either explicitly or implicitly, that when charges are filed, dismissed and refiled, that the period during which the case has been dismissed may be included for consideration in determining whether a speedy trial right has been impinged. *See Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975); *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). From these cases Dunlap concludes that he is entitled to affirmative relief based upon the prophylactic characteristics of the sixth amendment, notwithstanding the absence of a pending charge.

Dunlap's analysis of the law ignores the importance of *Arnold v. McCarthy*, 566 F.2d 1377, 1383 (9th Cir. 1978), which held that when a charge is dismissed without prejudice, the defendant is not an accused and cannot demand a speedy trial. Despite his attempts to distinguish *Arnold*, this Court

cannot escape the plain application of the case—without pending charges, Dunlap cannot demand a speedy trial.

It must additionally be noted, that the speedy trial rights asserted in the cases cited by Dunlap were not raised until charges had been reinstated against the defendants therein. In this case Dunlap is making such assertion prior to the reinduction of the charge. This action is premature. *See United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). Should the state again charge Dunlap with murder, he could at that time assert the points raised by this suit.

*Arnold* further indicates that any contention of prejudice between a dismissal and second trial is to be tested, not under the sixth amendment's right to a speedy trial, but under general requirements of due process. 566 F.2d at 1383. Dunlap has asserted that the delay in this case has deprived him of due process. This fifth amendment standard was discussed in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). As here, that case involved a substantial delay between the defendant's arrest and trial. The government in *Lovasco* relied on its broad prosecutorial discretion as justification for the delay. A comparison of the facts at bar with those presented in *Lovasco*, when coupled with the fact that Dunlap has not alleged actual prejudice to his case resulting from delay, require a finding that due process has not been offended.

## JURISDICTION OF COURT TO GRANT RELIEF REQUESTED

With his complaint, Dunlap seeks a federal court order directing a state agency to exercise its discretionary power so as to provide him with a state trial. The plaintiff is essentially seeking mandamus relief. The Attorney General defends on the ground that this Court does not have jurisdiction to issue mandamus relief compelling a state official to engage in discretionary action.

The argument relies on the case of *Clark v. State of Washington*, 366 F.2d 678 (9th Cir. 1966), which held that prosecuting attorneys, as quasi-judicial officers, enjoy immunity from suit under the Civil Rights Act insofar as prosecuting functions are concerned. The opinion further holds that federal courts are without power to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties. *Id.* at 681. Therefore, this Court is restrained by the *Clark* decision from issuing the type of relief sought by Dunlap.

## CONCLUSION AND ORDER

In summary, this Court finds and concludes: that a defendant against whom charges have been dismissed without prejudice does not have a right to demand a speedy trial; that the state's justification for delay, the Attorney General's exercise of prosecutorial discretion, is compelling; that without an allegation of specific prejudice to his case, which more properly ought to be raised if a new charge is filed, the failure of the state to provide Dunlap with a trial does not offend notions of due process; and, that this Court may not properly award plaintiff the relief requested. Accordingly,

IT IS ORDERED that Dunlap's complaint, seeking a directive compelling the Arizona Attorney General to immediately prosecute him, is dismissed.