**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INDEPENDENT LIVING CENTER OF
SOUTHERN CALIFORNIA, INC., a
nonprofit corporation; GRAY
PANTHERS OF SACRAMENTO, a
nonprofit corporation; GRAY
PANTHERS OF SAN FRANCISCO, a
nonprofit corporation; GERALD
SHAPIRO, Pharm. D., DBA Uptown
Pharmacy and Gift Shoppe; SHARON
STEEN, DBA Central Pharmacy;
TRAN PHARMACY, INC.; MARK
BECKWITH; MARGARET DOWLING,
    *Petitioners-Appellants*,

v.

JENNIFER KENT, Director of
Department of Health Care Services
of the State of California;
DEPARTMENT OF HEALTH CARE
SERVICES,
    *Respondents-Appellees.*

No. 15-56142

D.C. No.
2:08-cv-03315-
CAS-MAN

SACRAMENTO FAMILY MEDICAL
CLINICS, INC.; ACACIA ADULT DAY
SERVICES; RONALD B. MEAD,
D.D.S.; THEODORE M. MAZER, M.D.,
            *Intervenors-Appellants*,

                    v.

JENNIFER KENT, Director of
Department of Health Care Services
of the State of California;
DEPARTMENT OF HEALTH CARE
SERVICES,
            *Respondents-Appellees.*

No. 15-56154

D.C. No.
2:08-cv-03315-
CAS-MAN

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted September 26, 2018
Pasadena, California

Filed November 21, 2018

Before:  WILLIAM A. FLETCHER, MILAN D. SMITH,
JR., and MORGAN CHRISTEN, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Christen

# SUMMARY[*]

## Attorneys' Fees

The panel reversed the district court's denial of plaintiffs' request for attorneys' fees following the settlement of litigation concerning California's Assembly Bill X3 5, which reduced the Medi-Cal rate of reimbursement for healthcare providers by ten percent.

Plaintiffs sought a writ of mandamus under Cal. Civ. Proc. Code § 1085 on the ground that AB 5 violated Section 30(A) of the Medicaid Act, thereby conflicting with federal law and violating the Supremacy Clause. The Ninth Circuit upheld the district court's preliminary injunction against enforcement of the ten percent reduction, to apply both prospectively and retroactively. The Supreme Court vacated and remanded in light of the Centers for Medicare & Medicaid Services' approval of certain plan amendments to implement AB 5. The parties subsequently entered into a settlement agreement in which plaintiffs reserved the right to move for attorneys' fees. Plaintiffs did so pursuant to Cal. Civ. Proc. Code § 1021.5, and the district court denied their motions.

The panel held that, even though the case was properly removed from state court based on federal question jurisdiction, plaintiffs brought a state-law claim and were therefore permitted to seek attorneys' fees pursuant to § 1021.5. The panel concluded that plaintiffs' § 1085 Writ

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

was not a federal claim following *Armstrong v. Exceptional Child Care Ctr., Inc.*, 135 S. Ct. 1378 (2015), which held that neither the federal Medicaid statute nor the Constitution provides a cause of action for enforcement of Section 30(A). The panel concluded that the § 1085 Writ endured as a state-law claim because, under California law, § 1085 Writs may issue to compel state agencies to comply with federal requirements. The panel held that federal common law did not govern the award of fees and preclude an award pursuant to state law. The panel concluded that the *Erie* doctrine supported allowing plaintiffs to seek fees under § 1021.5. The panel reversed the district court's holding that plaintiffs were precluded from seeking an award of attorneys' fees under § 1021.5, and remanded to the district court to determine whether plaintiffs met the requirements of § 1021.5 to obtain a fee award, and if so, to calculate that award.

The panel further held that the district court abused its discretion in denying plaintiffs' motion to set aside funds for attorneys' fees following the decision permitting retroactive monetary relief from the Medi-Cal reimbursement reduction. The panel remanded for a determination of whether plaintiffs could recover any fees from the retroactive relief.

Concurring, Judge Christen wrote that she concurred in the result reached by the majority opinion but reached the same conclusion in a different way. Judge Christen wrote that plaintiffs could seek attorneys' fees under § 1021.5 because the parties' settlement included a state-law request for declaratory relief under § 1085. Judge Christen agreed that it was an abuse of discretion to deny plaintiffs' motion to set aside attorneys' fees from the reimbursement.

**COUNSEL**

Erwin Chemerinsky (argued), University of California, Berkeley, School of Law, Berkeley, California; Stanley L. Friedman and Rafael Bernardino, Jr., Law Offices of Stanley L. Friedman, Los Angeles, California; for Petitioners-Appellants.

Craig J. Cannizzo (argued), Hooper, Lundy & Bookman, P.C., San Francisco, California; Lloyd A. Bookman and Jordan B. Keville, Hooper, Lundy & Bookman, P.C., Los Angeles, California; for Intervenors-Appellants.

Susan M. Carson (argued), Supervising Deputy Attorney General; Julie Weng-Gutierrez, Senior Assistant Attorney General; Xavier Becerra, Attorney General of California; Office of the Attorney General, San Francisco, California; for Respondents-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

This case comes before us once again after a decade-long journey within the federal court system. In these final stages of the litigation, Petitioners-Appellants (Independent Living), a group of health care advocacy organizations and medical care providers, and Intervenors-Appellants (Intervenors, and together with Independent Living, Appellants), another group of health care providers and organizations, seek an award of attorneys' fees from the Director of the California Department of Health Care Services (the Director), and possibly others. We hold that the district court erroneously concluded that Appellants were

not entitled to seek fees pursuant to California Civil Procedure Code § 1021.5. In addition, we hold that the district court abused its discretion in denying Independent Living's motion to set aside fees from the retroactive monetary relief obtained in 2010. Accordingly, we remand to the district court to determine whether, in light of our ruling, Appellants meet the requirements to obtain attorneys' fees pursuant to § 1021.5 and Section III (C)(1)(a) and (b) of the Settlement Agreement (*infra*), and whether it is possible and appropriate at this stage of the litigation for Independent Living to recoup attorneys' fees "from Medicaid providers that purportedly obtained a benefit from counsel's work," pursuant to Section III (C)(1)(c) of the Settlement Agreement, and that received payments from the Department of Health Care Services (DHCS) as a result of this litigation.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Factual Background

The Medicaid Act authorizes the federal government to distribute funds to states for the purpose of providing medical assistance to low-income persons. Participating states are subject to certain conditions. *Armstrong v. Exceptional Child Care Ctr., Inc.*, 135 S. Ct. 1378, 1382 (2015). One such condition is the "equal access" provision (Section 30(A)), which requires that states set provider reimbursement rates that are "sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." 42 U.S.C. § 1396a(a)(30)(A).

On February 16, 2008, the California legislature enacted Assembly Bill X3 5 (AB 5). AB 5 reduced the Medi-Cal—

California's Medicaid program—rate of reimbursement for healthcare providers by ten percent. These cuts took effect on July 1, 2008.

## II. Procedural Background

On April 22, 2008, Independent Living filed in Los Angeles County Superior Court a petition for a writ of mandamus against the DHCS and the Director, pursuant to California Code of Civil Procedure § 1085 (the § 1085 Writ). The petition alleged that the ten percent rate reduction enacted pursuant to AB 5 violated Section 30(A), thereby conflicting with federal law, and violating the Supremacy Clause. In addition to the § 1085 Writ, Independent Living sought an injunction preventing the implementation of AB 5, as well as attorneys' fees pursuant to California's Private Attorney General Act, Cal. Civ. Proc. Code § 1021.5. On May 19, 2008, the Director removed this action to federal court based on federal question jurisdiction, and Independent Living filed the § 1085 Writ in federal court. On June 1, 2008, Independent Living dismissed the DHCS from its action, leaving only the Director as a defendant.

On June 25, 2008, the district court denied Independent Living's motion for a preliminary injunction preventing the enforcement of AB 5. We vacated that decision on July 11, 2008, holding that a plaintiff "may bring suit under the Supremacy Clause to enjoin implementation of a state law allegedly preempted by federal statute." *Indep. Living Ctr. of S. Cal. v. Shewry*, 543 F.3d 1047, 1049 (9th Cir. 2008) (per curiam); *see Indep. Living Ctr. of S. Cal. v. Shewry*, 543 F.3d 1050 (9th Cir. 2008) (*Shewry*).

On August 18, 2008, the district court enjoined enforcement of the ten percent reduction. On August 27, 2008, the court modified its injunction to apply only

prospectively from the date of the injunction because sovereign immunity purportedly barred retroactive relief.

On appeal, we analyzed whether retroactive application of the injunction violated California's sovereign immunity. *Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly*, 572 F.3d 644, 660–63 (9th Cir. 2009), *vacated and remanded on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. Cal.*, 132 S. Ct. 1204 (2012). We first found this retroactive relief would violate California's sovereign immunity absent the Director's waiver of that immunity. *Id.* at 661. We then noted that the Director would have waived sovereign immunity by removing the suit to federal court if California had previously consented to similar suits in state court. *Id.* Consequently, after reviewing numerous California state court decisions that permitted § 1085 mandamus actions seeking disbursement of unlawfully withheld funds, we held that the Director had waived sovereign immunity. *Id.* at 663. Therefore, we concluded that the injunction should also have applied retroactively to Medi-Cal payments between the time of AB 5's implementation and the date of the district court's injunction (the retroactive period). *Id.*

On March 15, 2010, Independent Living moved to set aside a portion of the monies paid, or to be paid, to Medicaid providers for the retroactive period to set up a fund from which attorneys' fees could be paid. The district court dismissed this motion because it believed it was premature and that "[n]either side has provided any reason why [the court] at the conclusion of the case could not fashion an order requiring . . . California to pay attorneys' fees based on what is ultimately the value of any judgment or settlement."

In 2011, the United States Supreme Court granted the Director's petition for a writ of certiorari with respect to the Supremacy Clause issue. Preceding oral argument before

the Supreme Court, the Centers for Medicare & Medicaid Services (CMS), the federal agency in charge of administering Medicaid, disapproved the Director's submitted plan amendments to implement AB 5 because they did not satisfy Section 30(A). *Douglas*, 132 S. Ct. at 1209. However, after oral argument, and before the Supreme Court issued its opinion, CMS approved some of the pending amendments. *Id.*

The Supreme Court ultimately held that CMS's decisions regarding the plan amendments changed the procedural posture of the case, and remanded it to our court to consider whether the providers could maintain an action pursuant to the Supremacy Clause. *Id.* at 1209–11. The Supreme Court thus vacated, but did not reverse, our decision affirming the preliminary injunction.

Following *Douglas*, the parties resolved this case in mediation, and produced a Settlement Agreement specifying the terms of their concord. In Sections III (C)(1)(a) and (b) of the Settlement Agreement, Appellants reserved the right to move for attorneys' fees before the district court. The state retained the right to oppose any such request. In addition, Section III (C)(1)(c) of the Settlement Agreement permitted "any plaintiffs' attorney" who had appeared in one of the listed cases to seek attorneys' fees "from Medicaid providers that purportedly obtained a benefit from counsel's work," but not from "DHCS or any of the State Released Entities."

Independent Living and Intervenors separately moved for attorneys' fees pursuant to § 1021.5. The district court denied the motions, reasoning that this case involved only federal law claims, so the district court could not award attorneys' fees pursuant to a state-law provision like

§ 1021.5.  Independent Living and Intervenors timely appealed, and their consolidated appeals are before us now.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We review a district court's decision to deny attorneys' fees for abuse of discretion.  *Labotest, Inc. v. Bonta*, 297 F.3d 892, 894 (9th Cir. 2002).  Abuse of discretion occurs if the district court based its decision "on an erroneous legal conclusion or a clearly erroneous finding of fact."  *Id.*  We review de novo whether the district court "applied the correct legal standard in determining entitlement to attorneys' fees."  *Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016).

## ANALYSIS

### I.  Availability of Attorneys' Fees Under § 1021.5

The central question in this appeal is whether Appellants brought a *state-law claim* or a *federal claim*, for the answer to that question will determine whether they are entitled to seek attorneys' fees pursuant to California's § 1021.5 in federal court.  We hold that Appellants brought a state-law claim, and that they are therefore permitted to seek fees pursuant to § 1021.5.

### A.  Federal Question Jurisdiction

The Director argues that despite Appellants' only cause of action being the § 1085 Writ, their action involved "solely" federal law, which permitted the federal courts to exercise federal question jurisdiction.  However, the fact that the federal courts exercised federal question jurisdiction

does not automatically determine whether Appellants' claim was based on federal or state-law.

The Director removed this case based on federal question jurisdiction. With good reason, we originally understood Appellants' cause of action to constitute a suit pursuant to the Supremacy Clause to enjoin state legislation allegedly preempted by a federal statute (here, the Medicaid Act). *Shewry*, 543 F.3d at 1062, 1065–66. In so concluding, we relied in part on *Shaw v. Delta Air Lines, Inc.*, in which the Supreme Court observed that a plaintiff bringing such a suit "presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." 463 U.S. 85, n.14 (1983).

Of course, federal question jurisdiction encompasses more than just federal causes of action. Federal courts have jurisdiction to hear "cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983). Where, as here, state law creates the cause of action, federal jurisdiction may also lie if "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Id.* at 13. Quiet title actions, for example, have prompted the exercise of federal question jurisdiction. *See, e.g.*, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315–16 (2005) (exercising federal question jurisdiction over a quiet title action that required analysis of the federal notice statute).

In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, the Court held that federal question jurisdiction was unavailable over a state tort claim alleging a violation of a federal

misbranding prohibition, in part because Congress had not provided a private federal cause of action for that violation. 478 U.S. 804, 812 (1986). However, the Court has since noted *Merrell Dow* did not "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable & Sons*, 545 U.S. at 317. Rather, a federal right of action is "evidence relevant to, but not dispositive of" federal question jurisdiction. *Id*. Federal question jurisdiction over state-law claims will lie if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disturbing the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

We conclude that the § 1085 Writ meets the requirements of the *Gunn*/*Grable & Sons* inquiry, and arises under federal law within the meaning of 28 U.S.C. § 1331. To prevail on the § 1085 Writ, Appellants would necessarily have had to show that AB 5 violated the requirements of Section 30(A). This purported violation was the "central point of dispute." *Gunn*, 568 U.S. at 259. While the claim only called for a determination of the validity of California legislation, it more broadly raised the question of whether state legislation conflicted with Medicaid requirements. Given the ubiquitous reliance on Medicaid funding nationwide, the claim therefore had substantial "importance . . . to the federal system as a whole." *Id.* at 260. Indeed, the Supreme Court confronted this very issue in *Armstrong* just three years after its decision in *Douglas*. Additionally, the role of the Supremacy Clause in this case invokes the essence of the "federal-state balance." *Id.* at 258. Therefore, the Director's removal was proper, as was the court's exercise of federal question jurisdiction over the § 1085 Writ. However, the exercise of federal question jurisdiction

did not itself transform the § 1085 Writ into a federal claim. Determination of whether the § 1085 Writ constituted a state-law or a federal claim requires further analysis.

## B. State Claim or Federal Claim?

Appellants seek an award of attorneys' fees pursuant to California Code of Civil Procedure§ 1021.5. The Director argues that fees are unavailable pursuant to § 1021.5 because Appellants' claim was federal—a conclusion also reached by the district court.

However, during the period between *Shewry* and this appeal, the Supreme Court in *Armstrong* considered a suit similar to the one at hand. In that case, health providers sued officials in Idaho's Department of Health and Welfare, claiming that Idaho violated Section 30(A) of the Medicaid Act by reimbursing providers of habilitation services at impermissible rates. *Armstrong*, 135 S. Ct. at 1382. We had affirmed the district court's grant of summary judgment for the providers and stated that the providers had an implied right of action pursuant to the Supremacy Clause. *Id.* at 1383 (citing *Inclusion, Inc. v. Armstrong*, 567 F. App'x 496 (2014)). The Supreme Court reversed, holding that the Supremacy Clause is "not the source of any federal rights and certainly does not create a cause of action." *Id.* (citation omitted). The Court also determined that the suit against Idaho for enforcement of Section 30(A) of the Medicaid Act could not proceed in equity because Section 30(A) implicitly precluded private enforcement. *Id.* at 1385. Finally, the Court held that Section 30(A) of the Medicaid Act did not confer a private right of action under federal law. *Id.* at 1387. Thus, in short order, the Supreme Court determined that neither the federal statute nor the Constitutional provision at issue here provides similar plaintiffs a cause of action. Accordingly, Appellants' cause of action must be grounded

in state law, if a cause of action is to exist under the circumstances alleged.

Appellants argue that "the gist of [their] claim was that California breached its contract with the federal government," and that breach of contract is a claim arising under state law. This argument is meritless. In order to prevail on a contract theory, Appellants would have had to show that, at the least, they were third-party beneficiaries entitled to enforce a valid contract between the federal and state governments—a requirement that might have been impossible to show. *See Sanchez v. Johnson*, 416 F.3d 1051, 1059 (9th Cir. 2005) (holding that Medicaid providers "are, at best, indirect beneficiaries [of 42 U.S.C. § 1396a(a)(30)(A)] and it would strain common sense to read § 30(A) as creating a 'right' enforceable by them"). Regardless, Appellants never attempted or needed to make that showing, because this case was not litigated as an action on a contract. Therefore, in order for Appellants to recover fees under § 1021.5, the § 1085 Writ must stand on its own as a state-law cause of action.[1]

---

[1] The parties dispute whether a writ under § 1085 is best described as a remedial mechanism or a cause of action under California law; in reality, California courts have employed both descriptors. *Compare Kreeft v. City of Oakland*, 80 Cal. Rptr. 2d 137, 141 (Cal. Ct. App. 1998) ("Ordinary mandamus is the appropriate procedural mechanism for resolving the dispute in this case. A traditional writ of mandate under Code of Civil Procedure section 1085 is a method for compelling a City to perform a legal, usually ministerial duty." (citations omitted)) *with Lee v. Blue Shield of Cal.*, 65 Cal. Rptr. 3d 612, 619 (Cal. Ct. App. 2007) (referring to "a cause of action for a writ of mandate," as well as a "declaratory relief cause of action"); *see also Hayes v. County of San Diego*, 305 P.3d 252, 257 (Cal. 2013) (ruminating on the precise meaning of "cause of action" under California law). We need not wade into this dilemma, because as will be shown, regardless of whether the

Although Appellant's breach-of-contract theory is unavailing, we conclude that in this case the § 1085 Writ endured as a state-law claim. A brief survey of relevant cases clearly shows that California courts have deployed § 1085 much as it was used in this case. Section 1085 provides that "any court may" issue a writ "to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." Cal. Civ. Proc. Code. § 1085(a). Therefore, writ relief is available to compel a public agency to perform an act prescribed by law. *See, e.g.*, *Berkeley Unified Sch. Dist. v. City of Berkeley*, 297 P.2d 710, 715 (Cal. Ct. App. 1956) (mandamus appropriate to direct city auditor to release funds from tax levies for school purposes pursuant to city charter). Writ relief is available even where state action implicates federal issues. *See Conlan v. Bonta*, 125 Cal. Rptr. 2d 788, 803 (Cal. Ct. App. 2002) (writ of mandate issued to provide Medi-Cal recipient with proper reimbursements under the Medicaid Act). Even more relatedly, in *Mission Hospital Regional Medical Center v. Shewry*, the California Court of Appeal considered whether the Medicaid Act's notice and comment requirements applied to the California legislature's action to freeze the Medicaid rate of reimbursement during the 2004–2005 fiscal year, after a group of hospitals sought writ relief under § 1085. 85 Cal. Rptr. 3d 639, 642–43, 649 (Cal. Ct. App. 2008). The court agreed with the hospitals, remanding the case to the trial court to issue a writ of mandate enjoining the DHCS from utilizing the freeze provision. *Id.* at 661.

Particularly pertinent to this case, California courts have previously enforced Section 30(A) by issuing writs of

§ 1085 Writ is a procedural mechanism or a cause of action, its use to enjoin state action is well recognized.

mandate to the DHCS. *See, e.g.*, *Cal. Ass'n for Health Servs. at Home v. State Dep't of Health Care Servs.*, 138 Cal. Rptr. 3d 889, 900 (Cal. Ct. App. 2012) (further rate review of Medi-Cal reimbursement rates required in accordance with Section 30(A) and the state plan). However, a recent California appellate court decision called into question the future viability of using § 1085 Writs to enforce Section 30(A) violations. *See Santa Rosa Mem'l Hosp., Inc. v. Kent*, 236 Cal. Rptr. 3d 199, 207 (Cal. Ct. App. 2018). Relying heavily on the Supreme Court's decision in *Armstrong*, the California Court of Appeal held that a § 1085 Writ could not issue where the Medicaid Act did not provide for private enforcement of Section 30(A) and Section 30(A)'s broad standards for rate setting impeded a clear duty to perform. *Id.* at 206–207. The California Supreme Court has not decided this issue and, arguably, the California Court of Appeal decisions are split. Still, the potential ability of Appellants to prosecute this precise case under § 1085 if they filed again *today* is largely immaterial to whether they could have properly initiated such a state-court action *in 2008*.

Ultimately, it is clear that, under California law, § 1085 Writs may issue to compel state agencies to comply with federal requirements. That is the essence of Appellants' claim. Moreover, a significant portion of Appellants' success was due to our interpretation of state law. In *Maxwell-Jolly*, we analyzed California law to determine whether sovereign immunity precluded Appellants' claim for retroactive relief. We held that it did not, acknowledging, "Under California law, an action seeking injunctive relief that requires a state official to disburse funds is not an action against the State." *Maxwell-Jolly*, 572 F.3d at 662. Thus, had the action remained in state court, the Director would "not have enjoyed sovereign immunity" against an order for retroactive payments. *Id.*

Accordingly, we conclude that Appellants' claim pursuant to § 1085 is properly characterized as a state-law cause of action and its removal to federal court does not compel a conclusion otherwise. The overlapping concerns of federal law did not transform the § 1085 Writ into a federal claim, for as *Armstrong* elucidated, there was simply no federal right of action to be had. Since the § 1085 Writ was a state-law claim, we now turn to whether Appellants were entitled to seek attorneys' fees pursuant to § 1021.5.

## C. State Law Fee Awards in Federal Court

The general rule in federal courts is that "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975). We have stated that in a "pure federal question case" in federal court, federal law governs attorneys' fees. *Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.*, 581 F.3d 936, 940 (9th Cir. 2009). By contrast, "so long as 'state law does not run counter to a valid federal statute or rule of court . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (quoting *Alyeska*, 421 U.S. at 259 n.31).

Our previous cases in which we denied plaintiffs an award of fees under state law do not preclude recovery here. In *Klein*, we denied the plaintiff attorneys' fees under § 1021.5 because although he pleaded both federal and state-law claims, he did not prevail on the state-law claims. 810 F.3d at 702.[2] In *Home Savings Bank, F.S.B. v. Gillam*,

---

[2] Incidentally, *Klein* clearly states "federal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine." *Id.* at 701.

952 F.2d 1152, 1163 (9th Cir. 1991), we reversed the district court's award of attorneys' fees based on Alaska law. *Gillam* concerned the control and disposition of a legal indemnification fund set up by Home Savings Bank (HSB) with the Federal Home Loan Bank Board. *Id.* at 1154. The conservator of HSB sued Gillam, the former chief executive officer of HSB, to recover severance benefits paid to Gillam upon his resignation and to contest control over the legal indemnification fund. *Id.* We first held that the conservator had a right of action under the federal Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) to sue Gillam. *Id.* at 1157 ("FIRREA expressly provides for federal court jurisdiction over actions to which the [conservator] is a party."). We then held that the district court improperly relied on Alaska law to award attorneys' fees because the federal common law disfavoring non-statutory awards of fees directly conflicted with the state rule relied upon by the district court. *Id.* at 1162.

Similarly, in *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052 (9th Cir. 2000), we considered whether federal or state law governed the award of attorneys' fees incurred in filing a motion under Federal Rule of Civil Procedure 65.1 for a supersedeas bond posted under Federal Rule of Civil Procedure 62(d). The plaintiff originally filed in state court alleging state claims and a federal RICO claim. *Id.* at 1053. After the defendant removed the action to federal court, the district court dismissed the RICO claim but retained supplemental jurisdiction over the state claims. *Id.* The plaintiffs then filed a motion under Rule 65.1 to enforce a supersedeas bond, which the court granted. *Id.* at 1054. This court affirmed the district court's denial of attorneys' fees under California state law because the bond was "posted pursuant to Rule 62(d) and enforced pursuant to Rule 65.1." *Id.* at 1055. The court noted that it had "no opinion" on the

availability of attorneys' fees in a removed action seeking judgment "on a surety pursuant to state statute," as opposed to enforcement of a surety bond issued pursuant to the Federal Rules. *Id.* at 1056 n.4.

This case presents a different issue than those we confronted in *Klein*, *Gillam*, and *Bass*. Unlike in *Klein*, Appellants here prevailed on a state-law claim by succeeding on the § 1085 Writ. As determined by the Supreme Court, neither Section 30(A) nor the Constitution provided a federal right of action for Appellants, so there were no independent federal claims in this case. Thus, *Gillam* and *Bass*, in which federal provisions provided the right of action or the rule of decision, are inapposite. In short, federal common law does not govern the award of fees here, and an award pursuant to state law would not be improper.

### D. *Erie*

*Erie*[3] principles further persuade us that Appellants are entitled to seek fees pursuant to § 1021.5. As the Supreme Court has noted, nothing in *Erie* requires a departure from the principle that "a state statute requiring an award of attorneys' fees should be applied in a case removed from the state courts to the federal courts." *Alyeska Pipeline*, 421 U.S. at 259 n.31. Although this footnote referred to diversity jurisdiction cases, we have noted that the *Erie* doctrine "applies irrespective of whether the source of subject matter jurisdiction is diversity or federal question." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). Indeed, *Erie* itself was partially rooted in a desire to prevent the "result of a litigation materially to differ because the suit had been brought in a federal court." *Hanna*

---

[3] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

*v. Plumer*, 380 U.S. 460, 467 (1965). Further, *Erie* sought to avoid the forum shopping that had arisen after *Swift v. Tyson*, 41 U.S. 1 (1842). *Id.*

Because the § 1085 Writ is a state-law cause of action, we look to California law to determine whether attorneys' fees are available to Appellants under § 1021.5 of the California Code of Civil Procedure. Section 1021.5 is California's "private attorney general" fee statute. *Woodland Hills Residents Ass'n, Inc. v. City Council*, 593 P.2d 200, 208 (Cal. 1979). It states, "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest." Cal. Civ. Proc. Code § 1021.5. Pursuant to § 1021.5, a court may award attorneys' fees to a "successful party" in any action that

> has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

*Maria P. v. Riles*, 743 P.2d 932, 935 (Cal. 1987).

In determining whether a plaintiff is a successful party for purposes of § 1021.5, "the critical fact is the impact of the action, not the manner of its resolution." *Id.* at 937. Accordingly, the California Supreme Court has held that a plaintiff securing a preliminary injunction may be awarded

attorneys' fees under § 1021.5. *Press v. Lucky Stores, Inc.*, 667 P.2d 704, 710 (1983) (preliminary injunction restraining defendant from denying plaintiffs access to the store premises fulfilled § 1021.5's requirements for an award of fees).

In *Maria P.*, for example, the plaintiffs sought a preliminary injunction to prevent the school district from denying a student admission to school based on her noncitizen immigration status, and to prevent the school district and State superintendent from complying with California Education Code § 6957, which required the district to report the child's immigration status to the board of supervisors and Immigration and Naturalization Service. *Maria P.*, 43 Cal. 3d at 934. The trial court issued the preliminary injunction, ruling that Education Code § 6957 conflicted with the federal Family Education Rights and Privacy Act of 1974, and was therefore void under the Supremacy Clause. *Id.* Between the trial court's issuance of the preliminary injunction and the plaintiffs' motion for attorneys' fees, the California legislature amended the Education Code to delete all reporting requirements. *Id.* at 935. Due to the legislative amendment, the trial court awarded attorneys' fees to the plaintiffs based only on their work obtaining the preliminary injunction. *Id.* The California Court of Appeal reversed the fee award, but the California Supreme Court held that plaintiffs were successful parties because the state's posture changed as a result of their lawsuit and thus it served the public interest purposes of § 1021.5. *Id.* at 935, 938.

Similarly, here, Appellants secured a preliminary injunction against the enforcement of California state legislation on the ground that it violated a federal statute. Further, *Maria P.* establishes that CMS's subsequent

approval of California's amended reimbursement rates does not necessarily preclude Appellants' recovery of attorneys' fees. Thus, California law appears to demonstrate Appellants are "successful" parties under § 1021.5 and would have been entitled to move for attorneys' fees in state court.

Thus, to permit the Director to evade attorneys' fees by removing this action to federal court would violate the spirit of *Erie* and its twin aims. As here, when fees would probably be available in state court, to preclude a similar award in federal court would likely lead to forum shopping, among other maladies. Moreover, such a divergent result would foster the very "inequitable administration of the laws" that *Erie* sought to rectify. *Plumer*, 380 U.S. at 468. Therefore, we conclude that the district court erred in holding that Appellants were precluded from seeking an award of attorneys' fees under California Civil Code of Procedure § 1021.5.**[4]**

We remand to the district court to determine whether Appellants meet the requirements of § 1021.5 to obtain a fee award, and if so, to calculate that award. We express no opinion as to how the Settlement Agreement may affect such an award and leave that issue to the district court to consider in the first instance on remand.

---

**[4]** Appellants also argue that the district court erred by not employing the doctrine of judicial estoppel against the Director. In light of our ruling, we find no need to consider this additional argument.

## II. Motion to Set Aside Attorneys' Fees from the Common Fund

After our decision in *Maxwell-Jolly* permitted retroactive monetary relief from the Medi-Cal reimbursement reduction, Independent Living moved to set aside 25 percent of the $70 million reimbursement to set up a fund for attorneys' fees. The district court denied the motion to set aside funds, finding the request "premature" because there had not yet been a final adjudication or settlement, and determining that a set-aside was not in the public interest. Appellants now argue that the district court abused its discretion when it denied their motion to set aside funds. We agree.

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The principle justifying this doctrine is that

> persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Id.* (citations omitted). An award of fees from a common fund applies only if "(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." *Paul, Johnson, Alston & Hunt v. Graulty*,

886 F.2d 268, 271 (9th Cir. 1989) (quoting *In re Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985)). We have referred to the percentage requested by Appellants, 25 percent of the fund, as a standard or benchmark amount. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

We conclude that the district court abused its discretion when it denied Appellants' motion to set aside funds. First, the retroactive relief obtained satisfied the common fund requirements. The identifiable class of beneficiaries was comprised of Medi-Cal health providers who received reduced reimbursement for services provided between July 1, 2008 and August 18, 2008. Each member of this class had an "undisputed and mathematically ascertainable claim to part of a lump sum judgment recovered on his behalf." *Van Gemert*, 444 U.S. at 749.

Second, contrary to the district court's statement, a final settlement agreement or adjudication on the merits is not a prerequisite to the formation of a common fund. *See Reiser v. Del Monte Properties Co.*, 605 F.2d 1135, 1140 n.4 (9th Cir. 1979) (noting that it is not necessary to an award of attorneys' fees that a suit be litigated on the merits). We observed that the Supreme Court "has refused to place form over substance, focusing instead on the actual effect of a plaintiff's suit." *Id.* at 1140. The question is thus "whether a plaintiff . . . has conferred a benefit on others." *Id.* Here, the procurement of $70 million retroactive relief on behalf of Medi-Cal providers, many of whom were not plaintiffs in the case, undoubtedly conferred a benefit onto them irrespective of a final settlement or adjudication. In finding otherwise, and denying the motion to set aside funds, the district court abused its discretion. *See Hill*, 775 F.2d at 1040 (holding that a district court abuses its discretion if its

decision is based on an erroneous conclusion of law or if the record contains no evidence on which it rationally could have based its decision).

The Director's arguments to the contrary are unavailing. She primarily argues that the district court's denial of Appellants' motion to set aside funds was not a final judgment, and therefore we lack jurisdiction to review it under 28 U.S.C. § 1291. However, "[a] necessary corollary to the final judgment rule is that a party may appeal interlocutory orders after entry of final judgment because those orders merge into that final judgment." *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 897 (9th Cir. 2001). Appellants could not, and did not, appeal the denial of their motion to set aside funds at the time that decision was made. Appellants were only able to appeal that decision after the district court entered final judgment.

The Director also summarily argues that Appellants cannot appeal the motion to set aside attorneys' fee because the Settlement Agreement bars this relief. The Settlement Agreement specifies that the released claims either were "asserted" in the various cases between the parties (including this case) or "could have been asserted" in those cases. Yet, any relief that may result from this claim would likely not run against the Director, but rather against the recipients of the $70 million. *See Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 770 (9th Cir. 1977) (stating the "the original client's attorney's fees are not shifted to . . . the adversary-losing party; rather, fees are shifted to third parties, people viewed as beneficiates of the fund in some way"). Furthermore, the Settlement Agreement permitted Appellants to move for attorneys' fees under the "common benefit" theory provided they sought payment "exclusively and directly from Medicaid providers that purportedly

obtained a benefit from counsel's work, and not from [the Director]." Therefore, it is doubtful that the Settlement Agreement serves as a complete bar to this relief, unless the Director were ordered to pay. In any event, determination of the Settlement Agreement's effects, if any, on this issue are for the district court to ascertain in the first instance.

We remand this issue to the district court acknowledging the potential difficulty or impossibility of reversing its denial of the set aside for attorneys' fees, given the possible disposition of the funds to the various Medi-Cal providers and that some recipient providers may not still be operating. Nevertheless, the district court is better positioned than we are to determine if any non-disbursed funds remain, or if other funds could be recouped from which to award appropriate attorneys' fees.

## CONCLUSION

We remand to the district court to determine whether Appellants should recover attorneys' fees under Cal. Civ. P. Code § 1021.5, and, if so, the amount of the award. We also remand for a determination of whether Appellants can recover any fees from the retroactive relief obtained in 2010.

**REVERSED and REMANDED.**

CHRISTEN, Circuit Judge, concurring:

I concur in the result reached by the majority opinion. I write separately because I reach the same conclusion in a different way.

## 1.   Attorneys' Fees Under Cal. Civ. Proc. Code § 1021.5

As the majority explains, in February 2008, the California legislature enacted legislation reducing the Medicaid reimbursement rate for California healthcare providers by ten percent. Several Medicaid providers and recipients (the Appellants here) claimed that the discounted reimbursement rate was so low that it was inconsistent with the mandate in § 30(A) of the Medicaid Act, which requires states to keep the rate high enough to ensure that there are sufficient provider options.[1] Appellants' argument was that the California Legislature's action ran afoul of the Supremacy Clause.

Appellants petitioned for a Writ of Mandate in state court pursuant to § 1085 of California's Code of Civil Procedure. They sought to bar the California Department of Health Care Services ("DHCS") and its director from imposing the discounted reimbursement rate. The Director removed the action to federal court, and after several years of litigation, the parties settled their dispute. Appellants now seek

---

[1] *See* 42 U.S.C. §1396a(a)(30)(A), under which states accepting federal Medicaid funds must "provide such methods and procedures relating to . . . the payment for, care and services available under the plan . . . and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area[.]"

attorneys' fees under California's private attorney general provision, Cal. Civ. Proc. Code § 1021.5.

District courts in our circuit have concluded that "federal courts are without power to issue writs of mandamus to direct state agencies in the performance of their duties." *See*, *e.g.*, *Robinson v. Cal. Bd. of Prison Terms*, 997 F. Supp. 1303, 1308 (C.D. Cal. 1998); *Dunlap v. Corbin*, 532 F. Supp. 183, 187 (D. Ariz. 1981), *aff'd*, 673 F.2d 1337 (9th Cir. 1982) (table) (finding federal courts lacked the power to issue a writ of mandamus "directing a state agency to exercise its discretionary power"); *see also Clemes v. Del Norte Cty. Unified Sch. Dist.*, 843 F. Supp. 583, 596 (N.D. Cal. 1994) (concluding district court lacked jurisdiction to issue a state law writ).**[2]**  The majority cites to a number of California state court cases to illustrate that writs of mandate are available, including against the DHCS, to compel compliance with § 30(A), *ante* at 15–16, but that authority does not establish that a federal court is similarly authorized to order relief pursuant to § 1085.  Our court has never precisely defined whether and when a federal court may issue a § 1085 Writ of Mandate or injunction, but the State offers no persuasive support for its argument that federal courts cannot provide any relief pursuant to that provision.

Appellants' basic requested relief did not change when the State removed their case to federal court.  Suits with federal and state claims are removed in their entirety—"the *entire* action may be removed"—and any claims for which the district court lacks jurisdiction must subsequently be remanded.  28 U.S.C. § 1441(c)(1)(B) and (2) (emphasis added).  Here, nothing was ever remanded, and as they had

---

**[2]** *Abrogated on unrelated grounds by Maynard v. City of San Jose*, 37 F.3d 1396, 1403–04 (9th Cir. 1994), as amended (Nov. 22, 1994).

done from the beginning, Appellants continued to seek a judgment establishing that California's imposition of a cut reimbursement rate was unlawful because it conflicted with § 30(A)'s mandate. In other words, they sought both injunctive *and* declaratory relief.

Appellants were entitled to continue pressing their claim because a petition for a § 1085 Writ necessarily includes a request for a determination and declaration of rights. A court ruling on a § 1085 petition is required to first determine whether the requesting party is, or is not, entitled to the "use and enjoyment of [the] right" at issue. Cal. Civ. Proc. Code § 1085(a). Indeed, California case law recognizes that declaratory relief is the foundation for a § 1085 Writ of Mandate. *See*, *e.g.*, *Beach & Bluff Conservancy v. City of Solana Beach*, No. D072304, 2018 WL 5023596, at *1 (Cal. Ct. App. Oct. 17, 2018) (explaining that plaintiff "brought the present action for declaratory relief and traditional mandate under Code of Civil Procedure section 1085"). We need not be concerned with whether the district court could have issued an injunction or a writ of mandate in Appellants' favor had this case proceeded to judgment because the district court certainly could have entered a declaratory judgment establishing whether the discounted reimbursement rate was inconsistent with § 30(A), and that request for declaratory relief is enough to anchor Appellants' fees petition.[3]

---

[3] The State argued that § 1085 is only a procedural mechanism, not a cause of action. But there is no question that requests for declaratory relief can be stand-alone causes of action under California law. *See* Cal. Civ. Proc. Code § 1060 (allowing a party who desires a declaration of his or her rights or duties with respect to another to ask for such a declaration, either alone or with other relief).

The majority explains that *Armstrong v. Exceptional Child Care Ctr., Inc.*, essentially foreclosed Appellants' federal law claims by holding that neither the Supremacy Clause, the Medicaid statute, nor even general principles of equity provide a federal basis for challenging a state's use of Medicaid funds under § 30(A). 135 S. Ct. 1378, 1383–87 (2015). *Armstrong*'s limitation may apply to challenges based on state law as well, because the Court held that "the Medicaid Act implicitly precludes private enforcement of § 30(A)," and thus may preempt suits bringing § 30(A) challenges under state law. *Id.* at 1385. If we were ruling on the merits, *Armstrong* likely would require dismissal of Appellants' claims, but the parties settled their dispute before *Armstrong* was decided and we are tasked only with identifying the nature of the claims the parties resolved. Pre-*Armstrong*,  California state courts had issued writs of mandate to force compliance with § 30(A), *see ante* at 15–16, and Appellants' insistence that the State had violated § 30(A) presented significant litigation risk to the State. Both parties were aware of this and their settlement was global; it encompassed not only the Appellants' remaining federal claims but also their state § 1085 claim (or what remained of it).

So what state claim was settled? If nothing else, the settlement included that portion of Appellants' claim that constituted a request for declaratory relief; that much of the § 1085 claim surely survived. From there, *Erie* dictates that California's substantive law on attorneys' fees applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *ante* at 19–22. Just as the State could not escape its waiver of sovereign immunity by removing the case to federal court, *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644,

661–63 (9th Cir. 2009)[4], it could not avoid exposure to attorneys' fees through removal.  On remand, the district court must decide whether Appellants' counsel is eligible for attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5.

## 2.  Motion to Set Aside Attorneys' Fees

I also agree that it was an abuse of discretion to deny Appellants' motion to set aside attorneys' fees from the $70 million reimbursement.  Moreover, it is hard to see anything that would prevent the district court from recouping funds to which the Appellants' attorneys may be entitled, as long as the relief ultimately comes from providers who received a windfall as a result of the earlier reimbursement, and those providers have an opportunity to be heard on any proposed plan for recoupment.

Although we lack jurisdiction over the individual beneficiaries of the original reimbursement fund (i.e., the various medical care providers), the court continues to have jurisdiction over the Director and presumably it will be the Director who will be responsible for reimbursing providers for services yet to be furnished.  I see no absolute obstacle to gradually recouping an appropriate fee amount either as part of a fractionally reduced reimbursement payment to the overcompensated providers or through some comparable process.  The Director pointed out in her briefing at the time the Appellants moved for a set aside that there are inefficiencies and transaction costs associated with adjusting the department's automated payouts.  However, those difficulties do not appear to be sufficiently onerous to

---

[4] *Vacated and remanded on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204 (2012).

warrant denying Appellants' counsel a fee award to which they may be entitled.